Sneed v. State.

------------------

## SNEED V. STATE.

1. CRIMINAL PRACTICE: *Competency of juror.*

A juror who states upon his *voir dire* that, while he has neither formed nor expressed an opinion as to the guilt or innocence of the accused, and has no partiality for, or prejudice against him, yet has impressions on his mind in regard to the case which it would require evidence to remove; that the impressions were not derived from conversations with the witnesses or with any one who professed to know the facts connected with the homicide, but were based upon rumor, and that he could and would decide the case from the evidence as honestly and impartially as if he had never heard of the case, is a competent juror for the trial.

2. SAME: *Same.*

The entertainment of preconceived notions about the merits of a criminal case, renders a juror *prima facie* incompetent. But the disqualification is removed by showing that the impression is founded upon rumor, and not of a nature to influence his conduct.

3. CRIMINAL EVIDENCE: *Former testimony of witness out of jurisdiction.*
The testimony of a witness, in the presence of the defendant, on the hearing of his application for bail, may be read on the final trial, if the witness is out of the jurisdiction of the court, or cannot be found.

4. CRIMINAL PRACTICE: *Postponement of trial.* ·
Whether Section 5108 of the Civil Code is applicable to criminal trials, or if so is constitutional, *quere?*

APPEAL from *Saline* Circuit Court.
Hon. J. B. WOOD, Circuit Judge.

*Met. L. Jones* for Appellant.

The deposition of Waller was improperly admitted. This witness was never subpœnaed.

The continuance should have been granted. Appellant was entitled to be confronted with his witnesses.

The Waller testimony does not come within the rule of *Hurley v. State, 29 Ark., 17;* nor *Dolan·v. State, 40 Ark., 504.* See *33 Ark., 539.*

The jurors who stated that they had formed opinions, should have been excused.

The rule as to admitting what a witness would testify, if present, to defeat a continuance, does not apply to criminal cases. The defendant is entitled to have the benefit of the witnesses' testimony before the jury. If it does apply, it is unconstitutional.

*Dan W. Jones,* Attorney General, for Appellee.

In admitting this written statement of Waller, the court committed no error. *Hurley v. State, 29 Ark., 17; Dolan v. State, 40 Ark., 454.*

The instructions, given at the instance of the state as well as those by the court on its own motion, were excepted to in mass. They were all legal and exceedingly fair. But any of

them being good, all must stand. *Carroll v. State, 46 Ark.,* and cases there cited. *45 Ark., 539.*

The appellant's third, sixth, eighth, tenth and thirteenth instructions were refused. The third was in reference to the degrees of murder, and the jury finding the appellant guilty of manslaughter, was unaffected by its refusal.

The sixth, as asked, was misleading to the jury by conveying the idea that if the witness contradicted himself, they should disbelieve everything he said. The court had already properly stated the law in the fifth for appellant, and on its own motion also. *Yoes v. State, 9 Ark., 43; Atkins v. State, 16 Ark., 569; Drennen v. Lindsey, 15 Ark., 359.*

The eighth asked that appellant be excused for what he did if the deceased or his party fired on him first. This was erroneous, for if he could then avoid further conflict without greater danger to himself, it was his duty to do so. *Palmore v. State, 29 Ark., 250; Dolan v. State, supra.* The third instruction, at the instance of the state, was a proper direction on the point. The thirteenth was faulty in calling the attention of the jury to the weight they should give to a part of the evidence, while the court gave instructions as to reasonable doubts in the twelfth for appellant, and in those given on its own motion.

The appellant fails to show how he was prejudiced in the rulings upon the qualifications of jurors, because each one with whom any fault could be found, was challenged by him, and he does not show that he was compelled to take an objectionable one after his challenges were exhausted. But the court committed no error as to the jurors. *Wright v. State, 43 Ark., 641.*

The evidence fully sustains the verdict, and the instructions taken together as a whole, were full, clear and impartial, and the appellant has no just ground of complaint in the whole case.

SMITH, J. B. C. Sneed was, jointly with his son, Dink Sneed, and his son-in-law, McCall, indicted by the grand jury of Grant County, for the murder of Jacob Rhodes. The venue was changed to Saline, and, upon a separate trial, he was convicted of voluntary manslaughter, and sentenced to the penitentiary for four years. A new trial was denied him, and numerous exceptions were saved, of which the following only are deemed worthy of notice:

1. It was alleged that the verdict was contrary to the evidence.

The proofs tended to show the existence of a bitter feud between the indicted parties and the deceased, his brother Henry, and brother-in-law, Carver. In fact they were at open war; habitually wearing arms in expectation of a rencounter. The elder Sneed had sworn out a warrant, charging Henry Rhodes with the removal or disposal of a horse, upon which he held a mortgage lien. Jacob and Carver were subpœnaed as witnesses. On the day of trial, the partisans of both sides attended, the majority of them with arms in their hands. And after the trial was concluded, about three o'clock p. m., Jacob Rhodes and Carver started home afoot. They were armed with double barreled shot-guns, and traveled the same highway, by which it was necessary to reach their homes. They were soon followed by McCall and the younger Sneed, also on foot, the latter carrying in his hand a large navy repeater, with his thumb on the cock and his finger on the trigger. Close in the rear rode his father, with a gun across his lap, and three other persons, who had no connection with the quarrel. By quickening their pace, they overtook the Rhodes party at the distance of three quarters of a mile from the magistrate's house, where the trial had taken place, and just before reaching a road which diverged to the right, and led to the home of Rhodes and his companion, McCall brought on the affray by attempting to seize Carver's gun. A scuffle ensued,

ten or a dozen shots were fired in rapid succession, and Jacob Rhodes fell, pierced with two balls. After he was down, B. C. Sneed beat him over the head, shoulders and breast with his gun, and fled the same night to Texas. Jacob died next day.

Under these circumstances, it is wholly unimportant to the proper disposition of this appeal, to inquire who fired the first shot, or whether B. C. Sneed fired before he was shot at, or whether it was his shot that cut down Jacob, or whether Jacob's death was caused by a gun-shot wound, or by the blows that were rained upon him after he had fallen. Indeed there are indications in the record that the whole affair was preconcerted, so far as the Sneed party was concerned; and we should have been loth to disturb a verdict for a higher grade of homicide, if the jury had so found. It will suffice to say that the verdict was as favorable to the defendant as the law and the testimony warranted.

2. The court gave an elaborate charge to the jury, besides three special directions at the instance of the prosecution, and nine at the instance of the defendant, rejecting five of his prayers. Exceptions in gross were reserved to the general charge of the court, and to the instructions in behalf of the state. We perceive no serious objection to either or to any part thereof.

The law was fairly given and all aspects of the case covered. One of the rejected prayers related to the law of murder, and its refusal could not have prejudiced the defendant, as he was found guilty of a lower offense. Another was in reference to a point upon which the court had already given sufficient directions. The remaining prayers, if granted, might have led the jury to believe that the defendant was to be excused for the part he had taken in the fray, if the deceased or his party fired on him first, or if they were unable to tell whether the deceased died from wounds inflicted by the defendant himself.

3. In empaneling the trial jury, two persons who had been summoned on the venire, stated on *voir dire*, that, while they had neither formed nor expressed any opinion as to the guilt or innocence of the accused, and had no partiality for or prejudice against him, yet they had certain impressions resting on their minds in regard to the case, which it would require evidence to remove; that these impressions were not derived from conversations with the witnesses, or with any one who professed to know the facts connected with the killing of Rhodes, but were based on rumor only; and that they could and would decide the case upon the evidence adduced at the trial as honestly and impartially as if they had never heard of the case before. They were declared competent and were excused from serving by the defendant, who afterwards exhausted his peremptory challenges before the jury was completed.

*1. Competency of juror.*

The entertainment of preconceived notions about the merits of a criminal case renders a juror *prima facie* incompetent. But when it is shown that the impression is founded upon rumor, and not of a nature to influence his conduct, the disqualification is removed. *Dolan v. State, 40 Ark., 460; Polk v. State, 45 Ark., 170.*

*2. Same.*

4. One of the eye witnesses of the homicide was Waller, a book agent. He resided in Bradley County at the time; but at the date of the trial, subpœnæs directed to that county, as well as to other counties whither it was supposed he had gone, had been returned "*non est inventus.*" It was admitted by the defendant that the present residence of this witness was unknown and could not be ascertained. But on a previous application of the prisoner for bail, Waller had been legally sworn and examined in the prisoner's presence, and had been cross-examined, and his testimony reduced to writing, read to and subscribed by him, and lodged with the clerk of the circuit court. This deposition was allowed to be read, over the defendant's objections.

*3. Criminal Evidence:— Former testimony of absent witness.*

It has been several times ruled by this court that a deposition, taken under such circumstances, may be read as secondary evidence on the final trial, if the witness is out of the jurisdiction, or his whereabouts cannot be learned, without any violation of the constitutional right of the accused to be confronted with adverse witnesses. The accused has already enjoyed the privilege of meeting the witness face to face, and of subjecting him to a cross-examination. To prevent a failure of justice, it is permitted to prove what the witness then swore, the same as if the witness were dead. *Hurley v. State, 29 Ark., 22; Shackelford v. State, 33 Id., 539; Dolan v. State, 40 Id., 461.*

**4. Postponement of trial.** 5. The defendant moved for a postponement of his trial, on account of the absence of Virgil Stockton and Nancy Ann Chant. By these witnesses he had proposed to prove sundry threats of the deceased against the defendant and his party, made in the one case ten or twelve days before, and in the other case in the morning of the same day on which the shooting occurred. It was not alleged that these threats had been made known to the defendant before the homicide. The prosecution agreed to admit that Stockton, if present, would swear as set forth in the application; and the court found that due diligence had not been used in procuring the testimony of Mrs. Chant. This last named witness had been duly subpœnaed, but had been recently confined in child-bed. The want of diligence consisted in not taking her deposition pursuant to an understanding had between the court, the parties and their counsel, two months before, when the cause was continued, on the prisoner's application, for the absence of other witnesses, and was by agreement set down for trial on this particular day. There were sixty witnesses in the case, all residing at a distance of thirty-five or forty miles from the place of trial; and the court had announced that the defendant must take the depositions of such of his witnesses as were unable to attend by reason of sickness.

Sneed v. State.

So the court refused a continuance. The defendant insisted that he was entitled to the personal presence of the witnesses before the jury, and that he could not be forced to rely on the state's admission of what an absent witness would swear, nor to take his deposition.

Whether the statute which gives to the party resisting a continuance the option to admit that the absent witness would testify to the matters contained in the motion, and at the same time, the privilege of controverting by evidence the truth of those matters, was meant to apply to criminal cases; and whether, if so intended, it is not in derogation of the constitutional right of the accused to have compulsory process for obtaining witnesses in his favor, are questions that we prefer not to decide until they are squarely presented and have been fully argued.. *Mansf. Dig., secs. 2189, 5108.* They are not so presented, unless the testimony proposed to be adduced is both competent and material.

Upon the competency of uncommunicated threats, compare *Atkins v. State, 16 Ark., 569; Coker v. State, 20 Id., 53; Pitman v. State, 22 Id., 354; McPherson v. State, 29 Id., 226; Palmore v. State, Ib., 249; Harris v. State, 34 Id., 469; Wiggins v. People, 93 U. S., 465; People v. Stokes, 53 N. Y., 164; Wharton's Crim. Ev., sec. 757; 2 Bishop Crim. Pro., secs. 609–11, 619–27.*

If the evidence was competent, it was unimportant, owing to the peculiar facts of the case, or at best cumulative merely. For there was not the least doubt that the Sneed party were the assailants in the encounter which ended in the death of Jacob Rhodes. And considered as to proof of the deceased's hostile temper, that was abundantly manifested by the preparations he had made, which are more significant than any declarations could be. It was notorious that the two families were at declared enmity, and living in a state of undisguised hostility.

Let the judgment be affirmed.