<hr />

## HARDIN v. STATE.

Opinion delivered December 17, 1898.

| | |
|---|---|
| 66 | 53 |
| f69 | 325 |
| 66 | 53 |
| 672 | 152 |
| 872 | 161 |
| f72 | 618 |
| 66 | 53 |
| f79 | 132 |
| 79 | 133 |
| f80 | 15 |
| 66 | 53 |
| f85 | 68 |
| f85 | 69 |
| 85 | 539 |

1.  JUROR—COMPETENCY.—A juror in a criminal case who states that, from rumor and from reading the newspapers, he has formed an opinion as to defendant's guilt which it will require evidence to remove, but that, for the purpose of the trial, he can disregard such opinion, and give defendant a fair and impartial trial, is not incompetent, if it does not appear that he entertained any prejudice against defendant. (Page 55.)

2.  EVIDENCE—WHEN CONFESSION NOT VOLUNTARY.—A confession made by a prisoner to the officer having him in custody, upon the latter's assuring him that they had evidence to convict him and exhorting him to tell the truth, with other remarks intended to convey the idea that if he confessed it would save him from the death penalty, is involuntary and inadmissible. (Page 60.)

3.  SAME—DEFENDANTS' TESTIMONY ON TRIAL OF CO-DEFENDANT.—Defendant's testimony, on the trial of one jointly concerned with him in commission of the crime charged against him, to the effect that he had been offered no inducement to make a confession is not admissible on his own trial to prove that such confession was voluntary; Sand. & H.

Dig. § 2909, providing that the testimony of one of two or more persons jointly concerned in the commission of crime "shall in no instance be used against him in any criminal prosecution for the same offense." (Page 63.)

Appeal from Van Buren Circuit Court.

E. G. MITCHELL, Judge.

*J. H. Harrod,* for appellant.

It was error to admit a juror who had formed an opinion as to the guilt or innocence of the accused, such that it would "take evidence to remove." 45 Ark. 165; 56 Ark. 402. A confession, to be admissible, must be given freely, without either "the flattery of hope or the torture of fear" or any circumstance of official indictment. 50 Ark. 305.

*E. B. Kinsworthy,* attorney general, for appellees.

A juror who has formed an opinion merely from rumor and newspaper reading is competent. 13 Ark. 720; 19 Ark. 156; 30 Ark. 328; 47 Ark. 180; 84 Mo. 278. Whether or not confessions are voluntary is a question for the court, and its ruling will not be disturbed on appeal, unless it arbitrarily abuses its discretion. 84 Mo. 278; 28 Ark. 121; 28 Ark. 531; 50 Ark. 305. The court's finding that the confession was voluntary is supported by the law. 108 Mass. 464; 108 Mass. 285. The evidence shows it to have been so. 19 Ark. 156; 50 Ark. 501; 35 Ark. 47. Mere artifice in obtaining it does not render a confession inadmissible. 74 Mo. 128; 84 Mo. 278; 3 Brews. (Pa.) 461.

RIDDICK, J. The appellant, W. H. Hardin, was indicted by the grand jury of Van Buren county for the murder of Hugh Patterson. Patterson and his family were at supper on the 13th of December, 1897, when two masked men entered his house, and made an assault upon him, for the purpose of robbing him of his money. Patterson and his son resisted, and in the struggle which followed he was killed, and the robbers fled. Afterwards the appellant, Hardin, and one Lee Mills were suspected of the crime and arrested. Hardin made a confession, and also testified against Mills. Mills was indicted, convicted of murder, and executed. Hardin was then placed on trial, and

he also was found guilty of murder in the first degree, and sentenced to be hung.

This appeal of Hardin brings two questions before us for consideration. The first relates to the ruling of the circuit court upon the challenge of defendant to certain jurors. These jurors had formed opinions from rumor and from reading newspapers, and also one or two of them had heard statements of persons who had attended the investigation before the coroner's jury. In the course of their examinations, each of them stated that it would take evidence to remove his opinion, but that, for the purpose of the trial, he could disregard such opinion, and give the defendant a fair and impartial trial upon the law and evidence, uninfluenced by the opinion he then entertained. It did not appear that either of them entertained any prejudice against the defendant. Upon further examination it seems that each of them also retracted or modified the statement that it would require evidence to remove the opinion held by him.

But, if we concede the contention of counsel for appellant to be true, that the jurors did entertain opinions of the merits of the case which it would require evidence to remove, does it follow that the circuit court erred in holding them to be competent? An examination of the decisions of this court rendered since the adoption of the code, which now regulates the method of selecting jurors and the grounds of challenge in criminal cases, will disclose some conflict in the decisions on this point. Three of such decisions seem to hold that an opinion by a juror concerning the merits of a criminal case, requiring evidence to remove it, does not necessarily disqualify him from sitting in such case. *Benton* v. *State*, 30 Ark. 328; *Casey* v. *State*, 37 Ark. 67; *Sneed* v. *State*, 47 Ark. 180, 1 S. W. 68. Opposed to these decisions, there are two cases which adopt the rule contended for by counsel for appellant,—that an opinion requiring evidence to remove it renders the juror incompetent. *Polk* v. *State*, 45 Ark. 165; *Vance* v. *State*, 56 Ark. 402, 19 S. W. 1066. A consideration of the facts upon which these two last-named cases were based will show that, although it was said in each of them that an opinion requiring evidence to remove it disqualifies a juror, yet it was unnecessary to have gone to that extent in order to support the conclusion

of the court in those cases. The judgment of reversal rendered in each of those cases was right, without regard to such rule.

In *Vance* v. *State, supra,* the defendant was convicted of an assault with intent to kill. One of the jurors held to be competent by the circuit court stated on his examination in said court "that he was in an adjoining room to that where the defendant did the shooting, eating dinner, and he heard shots, jumped up, ran out, and saw the defendant running up the street with a smoking pistol in his hand." It can hardly be doubted that this juror (being at the place where the shooting occurred, hearing the shots, and seeing the fleeing defendant and the smoking pistol) acted as men usually do in such cases,—made inquiry as to the cause and origin of the difficulty, discussed the question with those present, and formed his opinion from the facts known by him and learned from others at that time. He stated that he could give the defendant a fair and impartial trial, notwithstanding the opinion he entertained; but when it is apparent that the juror has formed an opinion from his own knowledge of the facts of the case, or that, from his connection with the prosecution or defense, he is not an impartial juror, his statement that he can give the defendant a fair and impartial trial will not remove the objection to his competency, for it is possible that the most prejudiced man might be willing to say, and even believe, that he would be an impartial juror. Had this juror answered that it would take no evidence to remove his opinion, he would have still been incompetent; and, even had he disclaimed any opinion, it is doubtful if he would have been a competent juror. The judgment in the Vance case, therefore, is clearly right, irrespective of the question now under consideration.

The same thing may be said of the decision in *Polk* v. *State.* Several jurors stated on their examination in that case that they had formed opinions as to the guilt or innocence of the defendant. One had an impression on his mind from having heard a witness for the state testify in a case against another person jointly indicted with defendant for the crime of murder for which defendant was being tried. Another had formed an opinion from the statement of a person "who pur-

ported to state the facts." Yet the circuit judge refused to
allow the defendant to ask one of these jurors, on his examina-
tion, whether it would take evidence to remove the impression
he had on his mind. He refused to allow him to ask another
whether he could go into the jury box prepared to give
the defendant the presumption of innocence, or to ask another
whether, from his knowledge of his own mind, he believed him-
self to be an unbiased juror. The object of the examination of
jurors touching their qualifications, said Judge Smith in that
case, is to ascertain whether they are impartial. "The court,"
he said, "is the trier, and should permit any question to be an-
swered which seems to be propounded in good faith for the
purpose of sifting the truth, and searching the consciences of
the jurors." The jurors having stated in that case that they
had opinions concerning the guilt or innocence of the defend-
ant, it was incumbent on the state to show that such opinions
were not of a nature to influence their judgment in the trial of
the case. This was not shown, for the circuit court, upon the
jurors stating that they could give the defendant a fair and im-
partial trial, cut off further examination, and refused to permit
a full and fair examination of such jurors; and it could not be
said whether they were qualified to sit in the case or not, and a
reversal was necessary. But the learned judge who delivered
the opinion in that case undertook to lay down the rule broadly
that persons offered as jurors who state upon their examina-
tions that they have formed opinions of the guilt or innocence
of the defendant which would require evidence to remove are
incompetent, and should be rejected. The objection to his
reasoning on this point is that he seems to assume that an
opinion requiring evidence to remove it is necessarily a settled
or fixed opinion, and such as to prevent the juror from
impartially trying the case. Now, it is a matter of com-
mon knowledge that we all form opinions from rumor, and
from reading newspapers, which we retain until we hear
another version of the matter, or until time, or forgetful-
ness, or something, has removed them from our minds. If one
called for examination as a juror should have an opinion of
that kind concerning the case, however slight the importance he
attached to it, he might yet truthfully say that, if put on the

jury, it would remain on his mind until he heard something to the contrary,—in other words, that it would take evidence to remove it. It does not by any means follow that he would, if placed on the jury, be influenced by such opinion, or allow it to take the place of evidence. If he possessed ordinary intelligence, he would know, before being admonished to that effect by the presiding judge, that the rumor he had heard or the statement he had read in the newspapers was not evidence upon which he could act as a juror. He would know also that such rumors and statements are often misleading, and if he was fair-minded, and had no direct interest in the prosecution or defense, he would neither be governed nor influenced by such opinions in the trial of the case. It might, indeed, be desirable to have jurors without opinions of any kind; but that is impracticable in this age, when newspapers go into every corner of the land. To seek an impossible jury consisting of perfect men without bias of any kind would be, to use the language of Mr. Bishop, simply to forbid the wheels of justice to move. Bish. Cr. Prac. § 910. Our statute, therefore, wisely provides that it shall not be a ground of challenge that a juror has formed or expressed an opinion from rumor merely. Sand. & H. Dig. § 2212. But the rule, as broadly stated in *Polk* v. *State*, operates to exclude nearly every juror challenged who has an opinion of any kind, and, in effect, almost annuls the statute. A writer in the American Law Register, speaking of this question, says: "It is quite a common thing for counsel to propound to a juror the question whether he has such an opinion as will require evidence to change it. But, while some courts seem to recognize this as a test, the overwhelming weight of authority does not regard it as a proper test, as no rational person ever has an opinion on any subject which is changed or removed except by evidence of some kind." Note to *Ex parte Spies*, 27 Am. Law Reg. (N.S.) 46.

But our objection to such a test is not that it is unsupported by authority, for we believe that it is adopted by a number of learned courts, but our objection is that in the actual administration of justice it is impracticable. It is well known that the most intelligent and better class of citizens frequently object to serving on juries, especially in trials

for capital offenses, where they are likely to be closely confined and deprived of their liberty for several days. If they can disqualify themselves without stating a falsehood, they are almost certain to do so. This class of men read newspapers and keep informed on current events, and usually have opinions of some sort in reference to cases for murder on trial in their county. But, if they have an opinion of any kind, they can, under the rule contended for, easily render themselves subject to challenge for cause by stating that it will take evidence to remove the opinion. And no one can charge the juror with having answered untruthfully in saying that, although he will not be governed or influenced by such opinion on the trial, yet he will retain it, however slight it may be, until he hears something to the contrary. A rule that rejects a juror on a challenge for such a cause is very close to one that rejects him if he has an opinion of any kind in reference to the case, and seems both unreasonable and impracticable.: A sounder rule, we think, was afterwards laid down by Judge Smith himself in *Sneed* v. *State*, 47 Ark. 180, 1 S. W. 68, when, in speaking of a juror who had answered that he had an impression with regard to the case which it would take evidence to remove, he said: "The entertainment of preconceived notions about the merits of a criminal case renders a juror *prima facie* incompetent. But when it is shown that the impression is founded on rumor, and not of a nature to influence his conduct, the disqualification is removed." *Sneed* v. *State*, 47 Ark. 180, 1 S. W. 68; *Casey* v. *State*, 37 Ark. 67; *Benton* v. *State*, 38 Ark. 328; *Ex parte Spies*, 27 Am. Law Reg. (N. S.) 23, and cases collated in note (S. C. 8 Sup. Ct. 22); 1 Thomp. Trials, §§ 79, 80, and cases cited.

It is the duty of the circuit judge, under our statute, to determine whether the opinion entertained by the juror is such "that he cannot try the case impartially and without prejudice to the substantial rights of the party challenging." Sand. & H. Dig. § 2208. Before deciding that question, he should permit a full and fair examination of the juror touching the nature and source of the opinion held by him, and his connection with the case, if any, in order to determine whether the opinion is such as to influence his judgment on the trial  If it appears

that the opinion is such as to influence or affect his action or finding in the case, the juror should be rejected. But when a question of that kind comes for review before the appellate court, it should be remembered that the circuit judge, in his efforts to secure competent and impartial jurors for the trial of a criminal case, has often to encounter a strong disinclination to such service on the part of those summoned. At times, too, improper persons, unsuited for jurors, endeavor to worm themselves upon the jury. As the trial judge has the juror before him, he can observe his manner and bearing, can note the amount of intelligence he displays, and judge his capacity for jury service, and whether he will be influenced by the opinion he has formed, or be able to disregard it. "In such cases," says Chief Justice Waite, "the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case." "The finding of the trial court upon that issue," he says, "ought not to be set aside by a reviewing court, unless the error is manifest." *Reynolds* v. *United States*, 98 U. S. 145. This seems to be a correct statement of the rule that should govern appellate courts in such cases. We will only add that in our opinion no such error is shown in the findings of the court as to the competency of the jurors challenged in this case. It might have been safer to have sustained the challenge to those jurors who heard statements from parties that had attended the sittings of the coroner's jury, but it appears that these were afterwards peremptorily challenged, and none of them sat on the jury.

The next question relates to the ruling of the court in admitting the confession made by Hardin, as evidence against him, to the admission of which he objected and duly excepted. The confession of a prisoner, in order to be admissible, must be free and voluntary. It must not be extracted by any fear of violence, nor obtained by any direct or implied promises of the officer having him in custody, or of any other person in authority. This rule in regard to confessions has not alto-

gether escaped criticism, and it is said that Bentham, the law reformer, advocated a rule admitting all confessions, in connection with the circumstances under which they were made, to be given such weight as the jury deemed proper. But the law both in England and the United States is settled to the contrary. By that law, if the confession "proceeds from remorse, and a desire to make reparation for the crime, it is admissible. If it flows from hope or fear excited by a person in authority, it is inadmissible." *Reg.* v. *Thompson*, 8 Eng. Ruling Cas. 90, and note; *Corley* v. *State*, 50 Ark. 305; 7 S. W. 255; *Young* v. *State*, 50 Ark. 501; 8 S. W. 828.

When a prisoner is merely exhorted to tell the truth, or when he is only admonished that he had better tell the truth, and no hope is held out that the punishment will in consequence be mitigated, any confession thereupon made will be admissible. But if the officer having the prisoner in custody assumes that he is guilty, and lets him know that, by his exhortion to tell the truth, he means for him to confess his guilt of the crime charged, it is the same as asking him to confess, and will be so considered. 1 Bish. Crim. Proc. § 1227. The facts in this case are, in substance, as follows: After Hardin and Mills had been arrested, the attorney employed to prosecute Mills told the sheriff that, in order to assure the conviction of one of the defendants, it would be necessary to get a confession from the other. The sheriff and certain citizens of the town also had an understanding that, if Hardin would confess, they would do what they could to save him from the death penalty. The attorney employed to prosecute Mills, knowing that the sheriff was endeavoring to secure a confession from Hardin, told him to tell Hardin that, if he would tell the whole truth, they would recommend to the prosecuting attorney that he permit Hardin to plead guilty to murder in the second degree, and thus save him from the death penalty. The sheriff did not communicate these statements to Hardin, nor did he make him any promise to use his influence with the prosecuting attorney to allow him to escape the death penalty by pleading guilty to murder in the second degree, until after the confession was made, nor did he know of any one else doing so. But the sheriff and certain citizens had frequent conversations with Hardin. The sheriff

let him know that they believed he was guilty, recited to him certain portions of the evidence, and told him that they had a strong case against him, and in that connection exhorted him to tell the truth, saying that by so doing he might escape the death penalty. One citizen, a short time before the confession, said to Hardin, in the presence of the sheriff: "If you are guilty, the best thing you can do is to tell it. It might help you. You know how such things are worked in the courts." Hardin, who had been deputy sheriff and constable, and was a man of ordinary intelligence and some firmness, did not yield readily to these exhortations. For several days he withstood them, while, with a view of securing a confession from him, he was kept closely guarded and separate from Mills. Meantime there was also considerable talk of a mob, of which talk Hardin was informed. After repeated conversations with him on the part of the sheriff, such as stated above, he at last gave in, and made the confession offered in evidence. He was then told that, to get the benefit of the promises made to him, he would have to go on the stand and testify against Mills. The prosecuting attorney was informed of the agreement made with Hardin, and approved it, but said that it would be better for him to make no direct promises. When the circuit judge was told of the matter, he refused to allow Hardin to plead guilty of murder in the second degree. Thereupon the prosecuting attorney and the attorney assisting in the prosecution of Mills had a consultation with the attorney for Hardin. "The prosecuting attorney," so the witness states, "told over what the judge said, but implied, for his own part, he would find a way to let Hardin off with second degree punishment, if Hardin would testify against Mills." Hardin thereupon testified against Mills, and no complaint is made that he held back the truth in any respect; but afterwards he was himself put on trial, and his confession and a portion of his testimony against Mills were used to convict him.

We have not set out all the testimony tending to show that the confession of Hardin was made under the influence of a hope of leniency held out to him by the sheriff and others; for this fact is established beyond controversy by the testimony of the sheriff himself, who seems to have made a candid state-

ment. "I asked him," he said, "if he ever heard of a man being hung who came out and told the truth, and I may have said that I never did. I told him it was best to tell the truth, and I intended for him to get the impression that, if he would tell the truth, it would save him from the death penalty, and my judgment is that I made that impression to him." When we remember, in this connection, that the sheriff had told Hardin that he believed he was guilty, and that they had a strong case against him,—endeavored, as he said, to impress that on his mind, —it is plain that his exhortation to tell the truth meant only that he should make a confession, and that Hardin so understood it. It was, in effect, just the same as if he had said: "You are guilty, and we have the evidence to prove it. But men who tell the truth are seldom hung, and you had better make a full confession of your crime, and in this way you may be saved from the death penalty." By the whole current of authority, both in this country and in England, a confession of a prisoner, following soon after such a statement made to him by the sheriff having him in custody, is inadmissible. *Corley* v. *State*, 50 Ark. 310, 7 S. W. 255; *Reg.* v. *Thompson*, 8 Eng. Ruling Cas. 90.

The evidence that this confession was involuntary is not contradicted in the slightest degree, except by a statement of the prisoner himself, made while on the stand as a witness against Mills. In response to a question asked him on that occasion, he said that he had been offered no inducements to confess or testify. This statement was probably made under the same influence which procured the confession, but, even if voluntary, the statute forbids it to be used against the defendant. "In all cases," says the statute, "when two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor; but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offense." Sand. & H. Dig. § 2909. The testimony of Hardin while a witness against Mills was not shown, further than the statement above mentioned. No objection was made to the admission of this statement, and no error can be based

upon its introduction; but, while this is so, we cannot give any weight to it, for the reason, as before stated, that the statute positively forbids it to be used against defendant. The evidence showing that the confession was made under the influence of hope excited by those in authority is, therefore, uncontradicted by any legal evidence. The evidence goes further, and raises a slight suspicion that the element of fear, as well of hope, had its effect, also. There was much talk of a mob taking Hardin and Mills out and hanging them. Hardin, while closely guarded, was kept informed of this talk by the sheriff. The sheriff did not remember having said to Hardin that the talk was that the mob would hang him, unless he confessed, but he significantly adds, "The guards talked to him more than I did." No one told what they said. This evidence as to the talk of a mob might amount to nothing, standing alone; but, when taken in connection with the other facts, it strengthens the conclusion that the confession afterwards made was inadmissible. We can appreciate the motives which led the circuit judge to refuse to permit Hardin to plead guilty to murder in the second degree. He doubtless believed that he was as guilty as Mills, and should suffer the same penalty. But in admitting the confession of Hardin as evidence against him, procured as it was in the manner above stated, we are of the opinion that he committed an error for which the judgment must be reversed, and the cause remanded for a new trial, and it is so ordered.

BUNN, C. J., does not concur as to the inadmissibility of the confession, but concurs otherwise.