VOWELL *v.* STATE.

Opinion delivered January 23, 1904.

1. IMPEACHING TESTIMONY—EXCLUSION—PREJUDICE.—The exclusion of testimony impeaching a witness for the prosecution is not prejudicial where, had it been admitted and the witness been wholly discredited, the evidence on the whole case was so manifestly in support of the verdict that it could not have been other than it was. (Page 159.)

2. JUROR—CONVERSATION WITH OUTSIDER—PREJUDICE.—Where a juror during the trial was seen to have a conversation with an outsider, from which prejudice might arise, the burden devolving on the state to show that no prejudice resulted to defendant is met by proof that the subject of the conversation was a domestic matter not relating to the subject of the trial. (Page 160.)

3. SAME—EXPRESSION OF OPINION.—Where a juror stated on his *voir dire* that he had not formed and expressed an opinion as to the guilt or innocence of accused, the discovery after the trial that he had previously stated that if what he heard was true defendant was guilty is not ground for new trial if the juror denied any recollection of having made such statement, and stated that if he made it he spoke from mere rumor, and had no opinion as to defendant's guilt or innocence until he made up his verdict. (Page 160.)

Appeal from Greene Circuit Court.

ALLEN HUGHES, Judge.

Affirmed.

*L. Hunter, J. D. Block* and *Lamb & Gautney*, for appellant.

The court erred in excluding the evidence of Sudie Vowell and Pearl Keller, as to statements made by Russell Williams. The court also erred in not granting a new trial because of the incompetency of Kirby as a juror. 66 Ark. 53; 64 Mo. 358; 37 Mo. 347; 64 Pac. 356; 84 N. W. 541; 50 Mo. 309; 19 Oh. 198; 3 S. E. 277; 26 So. 985; 2 Bond. 147; 3 Scam. 412; 32 Pac. 166; 3 Dall. 515; 9 Cal. 299; 8 Ia. 477; 6 Fed. 844; 15 Pac. 182; 4 Oh. St. 234; 1 Whart. Cr. Pl. & Pr. § 844; 1 Bish. Cr. Pr. § 949.

*George W. Murphy, Attorney General,* for appellee.

The refusal to grant a new trial on account of Juror Kirby was not error. 40 Ark. 511; 13 Ark. 317; 20 Ark. 53; 44 Ark. 115; 57 Ark. 1.

BUNN, C. J. This is an indictment for murder in the first degree, heard and determined on change of venue from the Western District of Clay county, in the Greene circuit court, resulting in a verdict and judgment for murder in the first degree as charged.

The evidence in the case fully sustained the verdict of the jury, and the only defense on the facts was that the deceased had made threats against the life of the defendant, and that these threats had been communicated to the defendant before the killing. The jury had this question before them, and determined against the contention of the defendant. But it is objected by the defendant that the court erred in not admitting the offered testimony of Sudie Vowell, daughter-in-law, and another witness by the name of Keller.

Sudie Vowell offered to testify that "I was at Mart Vowell's house on Saturday after the killing, and saw Russell Williams there," and the following question was propounded to her: "Tell the jury whether or not, upon that occasion, Russell Williams, either in words or substance, stated that Allen Lovejoy [brother of deceased] had it in for, and was threatening to kill, because he, Russell Williams, had told Mart Vowell of the threats Lovejoy [the deceased] had made against him [Mart Vowell]; and, if he didn't look out, he [Russell Williams] would get him [Allen Lovejoy]." The court refused permission to the witness to answer

this question. The only object to be obtained by the answer to this question was to show that on that occasion Russell Williams had thus made statements as to the threats made by the deceased against the defendant which were contradictory of his statements on the same subject made while on the witness stand.

This evidence was not offered to prove the threats, for it would have been inadmissible for that purpose, it being hearsay, but it was offered to impeach the testimony of Russell Williams. Had it been admitted, and had Williams thereby been thoroughly discredited in the minds of the jury, yet the evidence on the whole case is so manifestly in support of the jury's verdict that we cannot see how the verdict could have been affected in the least by it.

Another important question raised is with reference to the disqualification of G. W. Kirby, one of the jurors that tried the case. It appears from the affidavit of one Wyatt, filed with the motion for a new trial, that on the day of the trial, while the jury, of which Kirby was a member, were passing through the court house yard in a body and in charge of a deputy sheriff, they passed near the affiant and another man, and that Kirby left the other jurors and had a three-minute conversation with one Tom Simms, an outsider, but that said conversation was in such a low tone that affiant could not hear what was said; that when the deputy sheriff called Kirby back to the other jurors, said Simms followed him up and continued the conversation. In such case, where prejudice might arise, it devolves upon the state to show that the conversation was harmless and without prejudice. It was shown in this case that the subject of the conversation was a domestic matter, entirely foreign to the subject of the trial. This was a sufficient showing on the part of the state to remove the objection.

The next objection to the qualification of this juror was that, having stated on his *voir dire* that he had not formed and expressed an opinion as to the guilt or innocence of the defendant, yet, notwithstanding this statement, it was discovered after the trial that he had previously expressed such opinion against the defendant. That while on a fishing outing with some friends previous to his selection on the jury, and after the killing, this juror had said in the presence of one or more of his friends that if what he had heard was true the defendant ought to be hanged, or would be hung, or words to that effect. Kirby on oath stated in

response to this, after the trial, that he had not the slightest recollection of ever having made the statements, in this connection, attributed to him, and if he had ever done so, he spoke from the merest rumor, for he knew nothing of the facts of the case personally, or from information derived from any one having any personal knowledge of the facts of the case ; and, furthermore, that he had no recollection whatever of having ever made such statement when he was acting as a juryman in the case, and that he had never had any opinion on the subject of the guilt or innocence of the defendant until he had made up his verdict thereon. In the case of *Casat* v. *State*, 40 Ark. 511, this court said (quoting from the syllabus) : "Objection to a juror for having expressed an opinion of the prisoner's guilt came too late after the verdict, unless, upon proper examination as to his qualification as a juror, he has by concealment or prevarication imposed himself upon the panel." Everything in the evidence is opposed to the idea that this juror, by concealment or prevarication, or otherwise, had imposed himself upon the panel in this case, or in any manner endeavored to do so, and this in effect was the finding of the trial judge. In *Hardin* v. *State*, 66 Ark. 53, this court in regard to opinions of jurymen formed from rumor, said : "This, of itself, does not disqualify, unless it appears that the juror entertains some prejudice against the defendant." Certainly no prejudice appears in this case, but, if anything, the want of it. This subject is considered in a very learned opinion in *State* v. *Anderson*, 37 Pac. Rep. 1, and the conclusion of the court in that case was to the same effect as to opinions formed and expressed by a juryman before trial.

This disposes of all the questions involved.

The judgment is affirmed.