## DECKER v. STATE.

### Opinion delivered January 6, 1908.

1. JUROR—DISQUALIFICATION BY OPINION.—A juror is not disqualified who states that from rumor he had formed an opinion as to defendant's guilt, which he would retain until changed by testimony, but that he could go into the jury box and render a verdict according to the law and evidence, regardless of such opinion. (Page 65.)

2. EVIDENCE—OPINION.—It was not error, in a murder case, for the court to refuse to permit a witness to testify that he saw the State's principal witness a few minutes after the killing occurred, and that she was condemning defendant "in harsh terms," as the witness should not express his opinion, but should state the facts, and leave the jury to draw their own conclusions. (Page 70.)

3. INSTRUCTIONS—REPETITION.—Where the court instructed the jury that they were "the sole judges of the weight of the evidence and the credibility of the witnesses," it was not error to refuse to instruct the jury to consider the manner of the witnesses while testifying and their general conduct on the witness stand.   (Page 70.)

4. JUROR—COMPETENCY—CONCLUSIVENESS OF COURT'S FINDING.—Where a juror in a murder case on his *voir dire* testified that he had talked with some persons about the killing, but that he regarded what they told him as mere rumor, and had formed and expressed no opinion as to defendant's guilt, and where a witness in support of a motion for new trial testified that a year before the trial such juror related to him the supposed facts as to the killing and made the impression on his mind that the killing was a "cold-blooded murder," the finding of the trial court as to the juror's competency is conclusive. (Page 72.)

Appeal from Arkansas Circuit Court; *Eugene Lankford,* Judge; affirmed.

*J. M. Brice* and *W. N. Carpenter,* for appellant.

1. Where a juror on his *voir dire* discloses that he has formed an opinion as to the guilt of the accused which it would require evidence to remove, he is incompetent to serve, notwithstanding he may say that he can give the defendant as fair and impartial a trial as if he never heard of the case.   56 Ark. 402; 72 Ark. 151; 45 Ark. 170; 69 Ark. 325; 19 Ark. 165; 72 Ark. 160; 20 Ark. 50; 30 Ark. 741; 45 Ark. 168; 66 Ark. 449; 22 Ark. 150.

On the question of the credibility of witnesses and the weight to be attached to their testimony, the instruction offered by defendant correctly states the law, and the instruction given by the court errs in failing to instruct the jury to consider the manner of the witnesses testifying and their general conduct on the stand.   29 Am. & Eng. Enc. Law (1 Ed.), 768; 5 Ark. 403; 77 Ark. 334.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellee.

The competency of the jurors is settled by 66 Ark. 53.

BATTLE, J.   G. W. Decker was convicted of murder in the second degree. His punishment was assessed at five years' imprisonment in the penitentiary. He appealed.

In the formation of the jury in this case Athel Cummins was examined and answered as follows:

"Q. Have you heard anybody talk about this case who pretended to tell the facts? A. Yes, sir; I have heard a good many talk about it, and I suppose some of them have detailed the facts. Q. Did any of the witnesses talk to you about it? A. I don't know who the witnesses are. Q. Was what was said to you mere rumor, or was it the parties telling the facts as they understood them? A. Some of it was rumor, but it occurred here close to town, and I come in pretty often, and I have talked to several here in town who lived out here, who pretend to know the facts. Q. From what you have heard have you formed or expressed an opinion as to the guilt or innocence of the defendant? A. I have. Q. Will it take evidence to change or remove that opinion? A. Yes, sir; but evidence will do it. Q. Can you go into the jury box and render a verdict in this case according to the law and the evidence, notwithstanding you have an opinion now formed from what you have heard? A. I can and would. Q. You say that you have formed an opinion from what you have heard? A. Yes, sir. Q. Is it such an opinion that it will require evidence to remove or change? A. Yes, sir; but I think evidence will change it. Q. Mr. Cummins, if you are taken as a juror in this case, and the evidence should be equally or almost equally balanced as between the State and defense as to some material point, would not the opinion that you now have influence your verdict, and cause you to decide as to this point in favor of the side on which your opinion is now formed, or favors; in other words, would not the opinion which you now have balance the scales of your judgment upon the point where the evidence is equally balanced, and throw your decision in favor of the side which your opinion now favors? Would you not be influenced in such a case by your opinion now already formed? A. I don't think it would. Q. Is your opinion based on rumor, and can you lay this opinion aside, and try the case on the law and the evidence, without being influenced by this opinion? A. I don't know who are the witnesses in this case. It is rumor, and I can lay the opinion aside and try the case according to the law and the evidence, and would do it."

The court decided that he was competent. The defendant challenged him for cause, which was overruled. He then chal-

lenged the juror peremptorily, and he was excused.

G. W. Calloway, another juror, was examined and answered as follows:

"Q. Have you heard anybody talk about this case that pretended to detail the facts? A. I have heard different parties. Q. Did the parties who talked to you, or in your presence, pretend to tell how it occurred? A. Yes, sir; some pretended to know something about it. Q. When did you hear it? A. As soon as it was done. Q. Then you haven't heard it talked about recently? A. No, sir. Q. Notwithstanding the opinion, or impression, made upon you then, Mr. Calloway, could you go into the jury box and decide this case according to the law and the testimony, without regard to the impression you have? A. Yes, sir, I could. Q. Would you do it? A. Yes, sir. Q. Would you try it according to the rules of law as declared by the court? A. Yes, sir. Q. Are you acquainted with the defendant? A. Yes, sir. Q. Did you know Moncrief? A. Yes, sir. Q. How old are you? A. Sixty years old."

Cross-examination by Mr. Carpenter.

"Q. You say you have formed an opinion? A. I have, the way I heard it; if it is the way I heard it. Q. You have had the facts detailed to you the way they were stated? A. Yes, sir. Q. And you took them to be facts the way they were stated? A. I suppose they were. Q. Did you have any reason to doubt but that they were facts? A. No. Q. From that you formed an opinion? A. Yes, sir. Q. From that you have that opinion now? A. Yes, sir. Q. Is that an abiding opinion? A. No, sir; evidence could change it. Q. It would take evidence to change it? A. Yes, sir. Q. It is an abiding opinion until it is changed by evidence? A. Yes. Q. Could you go into the jury box and not be governed by it at all? A. No, sir, not at all. Q. You could lay your abiding opinion now formed from the facts, lay it aside like a blanket, and decide the case according to the testimony? A. Yes, sir. Q. But do you have an abiding opinion that it would take evidence to change you from what opinion you now have? A. Yes, sir."

The court decided that he, Calloway, was competent; and

the defendant challenged him for cause, which was overruled, and he was likewise challenged peremptorily, and excused.

Were these persons competent to serve as jurors in this case?

In *Hardin* v. *State*, 66 Ark. 53, this court held that "a juror in a criminal case who states that, from rumor and reading the newspapers, he has formed an opinion as to defendant's guilt which it will require evidence to remove, but that, for the purpose of the trial, he can disregard such opinion, and give defendant a fair and impartial trial, is not incompetent, if it does not appear that. he entertained any prejudice against defendant." Mr. Justice RIDDICK, in delivering the opinion of the court in that case, said: "Now, it is a matter of common knowledge that we all form opinions from rumor, and from reading newspapers, which we retain until we hear another version of the matter, or until time, or forgetfulness, or something, has removed them from our minds. If one, called for examination as a juror, should have an opinion of that kind concerning the case, however slight the importance he attached to it, he might yet truthfully.say that, if put on the jury, it would remain on his mind until he heard something to the contrary—in other words that it would take evidence to remove it. It does not by any means follow that he would, if placed on the jury, be influenced by such opinion, or allow it to take the place of evidence. If he possessed ordinary intelligence, he would know, before being admonished to that effect by the presiding judge, that the rumor he had heard or the statement he had read in .the newspapers was not evidence upon which he could act as a juror. He would know also that such rumors and statements are often misleading, and, if he was fair-minded, and had no direct interest in the prosecution or defense, he would neither be governed nor influenced by such opinions in the trial of the case."

Again he says: "A sounder rule, we think, was afterwards laid down by Judge Smith himself in *Sneed* v. *State*, 47 Ark. 180, 1 S. W. 68, when, in speaking of a juror who had answered that he had an impression with regard to the case which it would take evidence to remove, he said: 'The entertainment of preconceived notions about the merits of a criminal case renders a juror *prima facie* incompetent. But when it is shown that the

impression is founded on rumor, and not of a nature to influence his conduct, this disqualification is removed.' "

In *Sullins* v. *State,* 79 Ark. 127, the same doctrine was stated. In that case the court said: "The presumption should be that, when one is placed on the jury and hears direct testimony as to the facts of a case, his previous opinion, formed from rumor merely, will be disregarded entirely, and the case tried on the evidence only. If, however, the examination shows that the opinion of the juror is a fixed opinion, and one not likely to yield to the evidence, and of a kind to affect his judgment of the case, he should be discharged, whether his opinion was formed from rumor or not."

The opinions of Cummins and Calloway were based upon what they had heard. They could trace them to no reliable source. They were based upon no verified reports, but upon what to them was rumor, which, under the statutes of this State, is not a cause for challenge. Such opinions, when seen to be contrary to the facts, it is presumed, cease to have any effect upon the mind of an unbiased juror. No intelligent, unbiased mind could longer entertain them when it sees their foundation is not sustained by the evidence. For this reason rumors are not considered a cause of challenge.

We see no good reason for reversing the rulings of the circuit court as to the competency of the jurors. As said in *Hardin* v. *State,* 66 Ark. 60: "As the trial judge has the juror before him, he can observe his manner and bearing, can note the amount of intelligence he displays, and judge his capacity for jury service, and whether he will be influenced by the opinion he has formed, or be able to disregard it. 'In such cases,' says Chief Justice Waite, 'the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than words. * * * Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case.' 'The finding of the trial court upon that issue,' he says, 'ought not to be set aside by a reviewing court, unless the error is manifest.' *Reynolds* v. *United States,* 98 U. S. 145. This seems to be a correct statement of the rule that should govern appellate courts in such cases. We will only add that in our opinion no such error is

shown in the findings of the court as to the competency of the jurors challenged in this case."

The defendant in this case was indicted for murder in the first degree, committed by killing Ed Moncrief on the 11th day of March, 1906. Mrs. Emma Collins was present at the killing, and was the principal witness for the State. After she had testified and the State had closed its testimony, the defendant introduced John Lowe as a witness in his behalf. He testified that he was present at the place of the killing soon after it occurred and before the body of the deceased was removed; and that Mrs. Emma Collins was present. The defendant then asked him the following question: "Was Mrs. Collins condemning Decker in harsh terms?" The State objected, and the court refused to allow him to answer it.

The court instructed the jury, in part, as follows:

"20, 21, 22. Gentlemen, you are the sole judges of the weight of the evidence and the credibility of the witnesses. It is your duty, to reconcile all the statements of the several witnesses so as to believe all the testimony that you can. But if you can not do so, on account of contradictions, then you have the right to believe the witnesses whom you believe the most worthy of credit, and disbelieve those least worthy of credit. And if you believe any witness has willfully sworn falsely to any material fact in this case, you may disregard his whole testimony, or believe what you regard to be true, and disbelieve what you regard to be false. And in weighing the testimony it is proper for you to take into consideration all the surrounding circumstances of the witnesses, their interest in the result of the verdict, if any be shown by the testimony, and the opportunity of knowing the truth of the matter about which they testify, and the reasonableness or unreasonableness of the testimony given by them."

And refused to instruct at the request of the defendant as follows:

"8. You are instructed that you are the judges of the weight and credibility of the witnesses, and in passing upon them you are to consider their interests, their manner of testifying, their means of knowing the facts to which they testify, and their general conduct on the stand; and if you should believe

that any of the witnesses have wilfully sworn falsely to any material facts in the case, you are at liberty to disregard the whole statement of the witness or witnesses so testifying."

After the trial the defendant filed a motion for a new trial. One of the grounds was as follows: "Because the defendant has just discovered that one of his jurors, towit, Noah Wheeler, stated about two weeks before the present term of this court that, 'if what he had heard was true, G. W. Decker ought to be hung for this homicide (the killing of Ed Moncrief), and he wished he was on the jury to help hang him, and that if he could get there he would be sure to do it;' the above statement, made by the said juror Wheeler was made to one Dave Shields of Arkansas Post."

In support of the motion Dave Shields testified that sometime in the spring or summer of 1906 (the trial was in April, 1907) Noah Wheeler, a member of the jury that tried the case, related to him the supposed facts as to the killing of Moncrief, and made the impression on his (witness') mind that the killing was a "cold-blooded murder," and so expressed himself.

Noah Wheeler, on his examination touching his qualifications as a juror in this case, in answer to the following questions, testified as follows:

"Q. Have you heard anybody talk about this case? A. I have heard some talk about it. Q. Did the parties who talked to you, or in your presence, pretend to tell the facts about how it occurred? A. I don't know whether they did or not. Q. From what has been said to you about this case, have you formed or expressed an opinion? A. No, sir. Q. Did the parties that talked to you pretend to know the facts, and did they tell it to you for the facts? A. I don't know whether they did or not; I thought it was only rumor. Q. Then what you heard was only rumor as you considered it? A. Yes, sir. Q. Did any of the witnesses in this case talk to you about the case? A. Not that I know of; I don't know who all the witnesses are. Q. Did you know Ed Moncrief, the deceased in this case? A. I think I knew him when I seen him. Q. Do you know Bob Moncrief, the brother of deceased? A. I just know him; am not personally acquainted with him. Q. Then the rumor or talk you heard made no

impression on your mind at the time, and you have no opinion now as to the guilt or innocence of the defendant? A. No, sir. Q. Do you know the defendant, G. W. Decker? A. No; I have had him pointed out to me. Q. Can you go into the jury box, and render your verdict in this case without being influenced by what you have heard, and without bias or prejudice according to the law as given to you by the court and the evidence as given by the witnesses? A. I can."

The court overruled the motion for a new trial.

The court committed no error in refusing to allow the witness, Lowe, to answer the question propounded to him as to the conduct of Mrs. Emma Collins. It called for an expression of an opinion by the witness, and not for facts. The facts should have been proved, and the jury left to draw their own conclusions. The question was improper for this reason, if for no others.

The objection of defendant to the instruction of the court, copied in this opinion, is that it failed to tell the jury to consider the "manner of the witnesses while testifying" and their "general conduct on the stand," as requested in the instruction asked by him. But it did tell the jury that they were "the sole judges of the weight of the evidence and the credibility of the witnesses." This was sufficient to instruct them that they could consider everything that affected the credibility of the witnesses, which included their demeanor on the witness stand.

The testimony of Dave Shields upon the motion for a new trial and the testimony of Noah Wheeler upon his *voir dire* presented a question of fact to the court, and its decision is conclusive of that fact, it being the sole judge of the weight of evidence and credibility of witnesses, as to such fact.

The evidence is sufficient to sustain the verdict of the jury.

There are other questions mentioned in appellant's brief which we have considered and do not deem necessary to notice in this opinion.

Judgment affirmed.