## DAVIDSON *v.* STATE.

### Opinion delivered October 13, 1913.

1. CONTINUANCES—DISCRETION OF TRIAL JUDGE.—Applications for continuances are addressed to the sound discretion of the court, and the refusal of the court to grant a continuance will not be a ground for reversal, in the absence of a showing of an abuse of the judicial discretion.  (Page 455.)

2. CHANGE OF VENUE—SUPPORTING AFFIDAVITS—REQUISITES.—The motion for a change of venue was properly overruled, when the testimony of the witnesses making the supporting affidavits disclose that they had no definite and sufficient information as to the state of mind of the inhabitants of the district, showing a necessity for the granting of the motion in order to secure a fair trial to the defendant.  (Page 455.)

3. JUROR—DISQUALIFICATION BY OPINION.—A juror is not disqualified who states that he has an opinion about the case, formed from rumor, where he states that he will forego that opinion and give the defendant a fair and impartial trial on the evidence produced.  (Page 455.)

4. JUROR—DISQUALIFICATION BY OPINION.—It is not error for the court to excuse a juror, who states that he has known defendant a long time, is intimately acquainted with him and his family, and could not view the case with the same fairness and impartiality as if defendant was not known to him.  (Page 455.)

5. HOMICIDE—HABIT OF CARRYING A PISTOL.—Where defendant is indicted for homicide, it is not harmful error to admit evidence that defendant habitually carried a pistol, as that evidence negatives the idea of his having armed himself for the specific occasion.  (Page 455.)

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant was indicted for murder in the first degree. He moved for a continuance upon the ground of the absence of Lee Bush, a material witness, setting out what he expected to prove by him, and stated that the witness was within the jurisdiction of the court and he believed could have him present at the next term. The motion being overruled, he filed a petition for a change of venue, supported by the affidavits of G. E. Penn and N. T. Guthrie. The court examined the affiants, one of

whom (Penn) stated that he was a physician, residing at Marvell, and had been since 1893; that he had a practice in the surrounding country for twenty miles, that he came to Helena often and traveled through the country to see his patients. That he had heard the case discussed a great deal and he did not believe the defendant could obtain a fair trial in the county.

The other witness stated that he had lived at Marvell for twenty years and that he had heard people talk all over the county and in the city of Helena, and had heard some say the defendant ought to be hanged on general principles; that he was of the opinion that the defendant could not get a fair and impartial trial in the county, and based his opinion on what he had heard people say. The motion for a change of venue was overruled.

It appears from the testimony that the deceased and his brother, W. S. Eix, were operating a billiard hall in the rear end of a storehouse, in the front end of which there was a barber shop, in the town of Marvell. That they had a wheel in the room, with paddles to correspond with the numbers and which was called a raffle wheel, or wheel of fortune, and on the evening of the homicide they had raffled five turkeys, after which appellant came in with two turkeys and asked permission to use the wheel to raffle them off and the deceased consented and got him the paddles and the turkeys were raffled. The appellant then walked out of the front door and the deceased in gathering up the paddles missed four of them and asked his brother, W. S. Eix, if he knew where they were, and upon his replying "No," he then went in search of Davidson, the appellant, and in a few minutes came back inside the front door with defendant following him, and Davidson said to him, "Did you think I was trying to steal your paddles and run away with them?" to which deceased replied, "No; I just wanted to locate them." Defendant thereupon made a motion to strike, or struck, deceased, and they clinched and fell to the floor, the deceased on top. The deceased

cried out, "Boys, give me a hand, he is pulling his gun." Deceased's brother tried to get appellant's hand, but failed, and appellant pulled the gun, pressed it to deceased's side and fired. That he was trying to prevent him from using the gun. That the deceased at the time the gun was fired had hold of appellant, pushing him down and trying to prevent his using the gun; that he wasn't doing anything except trying to pinion defendant's arms. That there was no blow struck. After the shot was fired, deceased got up and said, "I am shot," and started for the barber shop. Davidson got up, backed toward the door, presented his gun at deceased's brother, and said, with an oath, "I will get you next." The parties had not had any difficulty before and were on friendly terms to within a few moments of the shooting. A witness for the State, Posey, testified that he was present as the deceased passed out of the barber shop, was gone a few minutes and returned; that the appellant rushed in behind him and cursed and struck him and deceased whirled and caught Davidson by the right leg and threw him down and underneath, and his brother from the back said, "Come in here, he is pulling his gun." That he and the barber rushed over to them and Davidson was on the bottom; that he stooped to catch his hand and said, "Look out," and as soon as he saw the gun he ran behind the lattice work. The shot was fired and Eix ran through the house to the door, saying, "I am shot," and Davidson held W. S. Eix, the brother, up with the gun and said, "Now, Goddamn you, I will get you next." Then the barber turned and said, "Bob, you have shot me," and Davidson said, "Forgive me; I never intended to shoot you."

Davidson was a stronger man than deceased, who didn't appear to be striking him. Another witness saw them clinch and fall and heard some one call for help, saying, "Come boys; he is trying to get his gun and shoot me." The bullet entered the left side between the eighth and ninth ribs and came out on the right side between

the tenth and eleventh ribs, causing his death the next day.

Defendant testified that he borrowed the paddles to raffle the turkeys off and won the last turkey himself, which he raffled again, and took four chances, keeping four of the paddles, representing them. He walked out of the billiard hall with the paddles in his pocket and deceased came up to him and said, "Where are those paddles?" and he asked deceased if he meant to say he tried to steal his paddles, and deceased said, "Yes, you have, and they are there in your pocket," and he pulled them out of his pocket and said, "There, take them," and deceased said, "No; you bring them back in the pool room where you got them," and turned around and went into the house and he followed him inside and said, "Here are your paddles." That he was four steps behind deceased and handed the paddles to him and said, "I never intended to steal your paddles," and deceased called him a liar and grabbed him by the leg and threw him down and deceased's brother run up and said, with an oath, "We have got you now," and grabbed him by the arm and ran his hand in his front pocket, and, "seeing there were three of them on me, I thought best to come out from under them." That he shot to save his life and only fired once and didn't try to shoot W. S. Eix, the brother of deceased, and didn't snap the pistol at him, and only told him not to come on him again. That he told the marshal that Eix started the trouble about the four paddles. He said he had had the pistol with which the shot was fired about a week and had been on friendly terms with the deceased until the night of the difficulty and the time of the shooting. That he offered the paddles to the deceased in the street and again in the barber shop. That when Will Eix and Posey came to where deceased had him down on the floor he thought they were going to do him bodily injury and that both the brothers said what they did in an angry manner while he was on the floor, and that Milton Eix, the de-

ceased, struck him once or twice, with his fist, while he had him down and he was asking him to get off.

The court instructed the jury which returned a verdict of guilty and from the judgment thereon this appeal comes.

*P. R. Andrews* and *Moore, Vineyard & Satterfield,* for appellant.

1.   A denial of the petition for continuance, under the circumstances shown, was an abuse of the court's discretion.   99 Ark. 394; 21 *Id.* 460; 60 *Id.* 564; 71 *Id.* 180.

2.   The change of venue should have been granted.

3.   In a criminal prosecution the State can not prove the accused's bad character as a circumstance of guilt. 91 Ark. 555.

4.   One offense can not be proved by evidence showing the commission of another.   91 Ark. 555; 68 *Id.* 577; 73 *Id.* 262; 100 *Id.* 321.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.   The burden is upon appellant to show an abuse of discretion.   94 Ark. 169; *Ib.* 538-545.

2.   There was no error in denying the motion for change of venue.   100 Ark. 218; *Ib.* 301-307; 107 Ark. 29.

3.   The court committed no error in its ruling as to the qualifications of jurors (85 Ark. 64), nor as to the admission of testimony.   73 Ark. 291.

Kirby, J., (after stating the facts).   It is first contended that the court erred in denying the motion for a continuance.   The court found that on May 1 the case was set for trial on the 22d, thereafter, and that shortly thereafter the defendant caused a subpoena to be issued directed to the sheriff of Prairie County, for the absent witness, not giving the sheriff any information as to his whereabouts, and had not made any effort to have the subpoena returned. Besides, the testimony of this witness was largely cumulative of that introduced.   Half a dozen or more people, all of whom saw the difficulty, being ex-

amined as witnesses. Applications for continuances are
addressed to the sound discretion of the court, or trial
judge, and we do not find that there was an abuse of
judicial discretion in the denial by the court of this mo-
tion. *Jackson* v. *State,* 94 Ark. 169; *Miller* v. *State, Ib.*
538; *McIlroy* v. *State,* 100 Ark. 310.

Neither did the court err in overruling the motion
for a change of venue. The court examined the wit-
nesses, making the supporting affidavits, and their testi-
mony disclosed that they did not have such definite and
sufficient information as to the state of mind of the in-
habitants of the county toward the defendant to make it
necessary for the granting of the motion in order to give
the defendant the benefit of a fair trial. *Williams* v.
*State,* 100 Ark. 218; *McIlroy* v. *State, Ib.* 307; *Wolfe* v.
*State,* 107 Ark. 29.

It is next contended that the court erred in ruling
upon the qualifications of two jurors, Meerifield and
Nolan. Merrifield stated that he had an opinion about
the case, formed from rumor, but that he could forego
that and give the defendant a fair and impartial trial on
the evidence produced, and the court correctly held him
qualified. *Decker* v. *State,* 85 Ark. 64.

The juror, Nolan, stated that he had long been ac-
quainted with the appellant and knew his family inti-
mately and could not view the case with the same fair-
ness and impartiality, as if appellant was not known to
him; that he would be biased in his favor, and would be
influenced by his acquaintance with the family to some
extent and the court thereupon excused him and com-
mitted no error in doing so. *Decker* v. *State, supra,* 85
Ark. 64.

Appellant also complains of the court's action in
allowing a witness to state that he was in the habit of
carrying a pistol, but if there was any error committed
in permitting the introduction of this testimony we are
of the opinion that it was harmless and could not have
prejudiced appellant's case. It tended in no wise to
show that he had armed himself for the encounter, but

rather the contrary, and he did in fact have the pistol and fired the shot which killed deceased, a club-footed man, not physically strong, and under such circumstances as fully warranted his conviction for the grade of the offense of which the jury found him guilty.

Finding no prejudicial error in the record, the judgment is affirmed.